# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 38196

KATHLEEN A. MC CALLISTER, in her
capacity as the bankruptcy trustee,

    Plaintiff-Appellant,

v.

GORDON DIXON, M.D., BLACKFOOT
MEDICAL CLINIC, INC.,

    Defendants-Respondents,

and

BLACKFOOT MEDICAL CENTER, LLC,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2012 Term

2013 Opinion No. 16

Filed: February 1, 2013

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of
Idaho, Bingham County.  Hon. Darren B. Simpson, District Judge.

The decision of the district court is <u>affirmed</u>.  Costs on appeal are awarded to
Respondents.

Cooper & Larsen, Chartered, Pocatello, attorneys for Appellant, Javier Gabiola
argued.

Moffat, Thomas, Barrett, Rock & Fields, Chtd., Pocatello, attorneys for
Respondent, Julian Gabiola argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

This is an appeal from a district court order dismissing Plaintiff-Appellant (Jerry
Doherty) as a party in a medical malpractice action against Respondents (Dr. Gordon E. Dixon
and Blackfoot Medical Clinic). The judgment was certified under Rule 54(b) of the Idaho Rules
of Civil Procedure on November 24, 2010. The district court, on September 16, 2010, ruled that
because Doherty failed to disclose this claim as an asset in his Chapter 13 bankruptcy
proceeding, he was judicially estopped from pursuing this claim against Respondents. The

district court further ordered that Doherty take nothing from Respondents, and that the bankruptcy trustee be substituted as the party-plaintiff. Doherty appeals the district court's order and argues that the district court abused its discretion in granting summary judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2004, Doherty sought treatment from Blackfoot Medical Clinic and Dr. Dixon—a general practitioner—for an eye injury. Doherty claims that Dr. Dixon failed to perform appropriate tests and failed to refer Doherty to an eye specialist, which resulted in the loss of his eye. On July 25, 2005, Doherty filed a Chapter 13 bankruptcy petition because he was behind on his truck payments. Doherty did not list any potential claims against Respondents on his asset schedule. The bankruptcy court confirmed Doherty's bankruptcy plan on September 6, 2005, whereby Doherty avoided over $12,000 in unsecured creditor claims. Doherty commenced a lawsuit against Respondents on September 6, 2006. Doherty did not amend his bankruptcy asset schedule to reflect the claim against Respondents prior to his discharge on January 21, 2009.

Doherty filed a motion in limine on August 11, 2009, seeking to exclude evidence of his bankruptcy. In response to the motion, on August 18, 2009, Respondents raised the issue of Doherty's failure to amend his bankruptcy asset schedule after filing this lawsuit. Respondents' response was treated by both Doherty and the district court as a motion for summary judgment.

On August 26, 2009, Doherty reopened his bankruptcy case and filed an Amended Schedule B (asset schedule), which reflected the current lawsuit as a potential asset. The bankruptcy court permitted Doherty to reopen his bankruptcy case on March 4, 2010. Doherty moved to join Kathleen McCallister ("McCallister") as a party-plaintiff to the lawsuit in her official capacity as bankruptcy trustee.

On September 16, 2010, the district court granted Respondents' motion for summary judgment and substituted McCallister as a party-plaintiff. After disposing of issues not raised on this appeal, the district court concluded that a debtor filing for bankruptcy must list all existing and potential assets and that this duty continues while the bankruptcy is pending. The district court found that by October 28, 2004, Doherty believed that Dr. Dixon's failure to refer him earlier to a specialist resulted in his loss of vision. Also, the district court found that when Doherty filed suit against Respondents on September 6, 2006, Doherty was fully aware that he had a claim against them. Yet, Doherty failed to list this asset or to amend his asset schedule with the bankruptcy court until Respondents objected.

2

The district court rejected the reasoning used in a string of Georgia cases that permit a subsequent reopening of a bankruptcy proceeding and disclosure of a non-disclosed asset to avoid application of judicial estoppel. It relied instead on federal precedent holding that the reopening cure encourages gamesmanship. The district court reasoned that the Georgia law was not persuasive because it failed to recognize the allocation of assets during bankruptcy. During bankruptcy, assets and causes of action belong entirely to the bankruptcy trustee. The Georgia approach—by permitting a debtor to maintain a lawsuit that does not belong to him or her as a debtor in bankruptcy—undermines the bankruptcy code. Also, permitting the debtor to "undo" his lack of disclosure encourages non-disclosure. Therefore, the district court found that such a cure is not a defense to judicial estoppel.

Doherty filed an affidavit asserting his non-disclosure of this lawsuit in his bankruptcy proceeding was a good-faith mistake. The district court found that good faith is insufficient to avoid application of judicial estoppel, because judicial estoppel is based upon knowledge of the asset and the potential incentive to conceal the asset. The district court found that the alleged mistake was the result of either a failure of counsel, which does not amount to inadvertence or mistake, or to ignorance of the law, which is not a defense. As to the two issues the district court found dispositive—knowledge and incentive—it found that Doherty knew of the claim, benefited from the discharge by the bankruptcy proceeding, and had a potential motive to conceal the claim from the bankruptcy court.

Doherty now argues that Respondents in the current matter are not prejudiced by his non-disclosure because it is primarily Doherty's creditors who were prejudiced. But the prejudice caused to Respondents did not weigh heavily on the district court's decision: it is the integrity of the judicial system, not individuals, that is protected by judicial estoppel.

Finally, the district court rejected Doherty's claim that permitting judicial estoppel would result in inequity because it allegedly impairs the ability of Doherty's creditors to collect. The district court found that even where a party fails to disclose a cause of action, that action belongs to the bankruptcy estate and the trustee of that estate maintains exclusive standing to pursue that claim. The district court did not find judicial estoppel inequitable to Doherty's creditors because it ordered the bankruptcy trustee be substituted for Doherty.

### III. ISSUES ON APPEAL

1. Whether the district court abused its discretion in imposing judicial estoppel.
2. Whether either Doherty or Respondents are entitled to attorney's fees and costs on appeal.

3

Though the district court called its dismissal of Doherty's claims "summary judgment," in actuality it merely dismissed Doherty's action on the basis of judicial estoppel. Therefore, the dismissal of Doherty will properly be reviewed under the abuse of discretion standard, not the summary judgment standard. The doctrine of judicial estoppel sounds in equity and is invoked at the discretion of the court. *Sword v. Sweet*, 140 Idaho 242, 252, 92 P.3d 492, 502 (2004). A reviewing court will examine an alleged abuse of discretion based on "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Riley v. W.R. Holdings, LLC*, 143 Idaho 116, 121, 138 P.3d 316, 321 (2006).

## V. DISCUSSION

**A.    The District Court Did Not Abuse Its Discretion When It Judicially Estopped Doherty From Pursuing His Claim.**

Doherty argues the imposition of judicial estoppel was improper because Doherty's claim against Respondents has nothing to do with his bankruptcy; does not involve the same parties; and does not arise out of the same transaction. Also, Doherty contends the district court improperly weighed inferences from the record that Doherty had no intent to conceal the lawsuit as an asset in the bankruptcy proceeding and his reopening and amending of bankruptcy asset avoids application of judicial estoppel. Doherty maintains that it is inequitable to both him and his bankruptcy creditors to dismiss him as a party, because the failure to report the claim did not prejudice Respondents, and prevents Doherty and his creditors from recovering.

*1.    Judicial Estoppel Applies to Bankruptcy Proceedings.*

Idaho adopted the doctrine of judicial estoppel in *Loomis v. Church*, 76 Idaho 87, 277 P.2d 561 (1954). Judicial estoppel precludes a party from advantageously taking one position, then subsequently seeking a second position that is incompatible with the first. *Wood*, 141 Idaho at 684, 116 P.3d at 14. The policy behind judicial estoppel is to protect "the integrity of the judicial system, by protecting the orderly administration of justice and having regard for the dignity of the judicial proceeding." *Id.* at 685, 116 P.3d at 15 (quoting *Robertson Supply Inc. v. Nicholls*, 131 Idaho 99, 101, 952 P.2d 914, 916 (Ct. App. 1998)). Broadly accepted, it is intended to prevent parties from playing fast and loose with the legal system. *Id.*; *see also* 31 C.J.S. *Estoppel and Waiver* §186 (2012). Judicial estoppel protects the integrity of the judicial system, not the litigants; therefore, it is not necessary to demonstrate individual prejudice. *Wood*, 141

Idaho at 686, 116 P.3d at 16 (citing *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001)). Judicial estoppel applies to inconsistent positions taken in bankruptcy proceedings. *Id.* (relying on decisions from numerous courts holding "privity . . . [though] often present in judicial estoppel cases, [is] not required." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002)).

In *Wood*, A & J Construction filed for bankruptcy and failed to list the Sugar Beet Property as an asset in its bankruptcy proceeding, nor did it list a joint venture agreement that it entered into with Wood. *Id.* at 684, 116 P.3d at 14. Wood was not listed as either a creditor or debtor in the bankruptcy proceeding. *Id.* Thereafter, A & J Construction brought an unjust enrichment suit against Wood on its interest in the joint venture, which was ultimately dismissed on grounds of judicial estoppel even though A & J Construction claimed to have honestly believed its interest in the joint venture was not an asset. *Id.* This Court affirmed the district court's grant of summary judgment on the grounds of judicial estoppel. *Id.* at 688, 116 P.3d at 18. In so doing, we relied heavily on federal precedent providing that anything less than full disclosure undermines the bankruptcy system. *Id.*

This Court was not alone when in 2005 we extended judicial estoppel to bankruptcy proceedings. *Compare Wood*, 141 Idaho at 688, 116 P.3d at 18, *with* Benjamin J. Vernia, Annotation, *Judicial Estoppel of Subsequent Action Based on Statements, Positions, or Omissions as to Claim or Interest in Bankruptcy Proceeding*, 85 A.L.R. 5th 353 (2001). Full disclosure is crucial to the effective functioning of the bankruptcy system: "[T]he importance of full and honest disclosure cannot be overstated." *Wood*, 141 Idaho at 685, 116 P.3d at 15 (citing 11 U.S.C. §§ 521(1), 541(a)(7)). The application of judicial estoppel is necessary in such cases to discourage debtors from concealing potential assets. *Hamilton*, 270 F.3d at 285; *Burnes*, 291 F.3d at 1286; *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988).

In this matter, Doherty asserts malpractice against Respondents and seeks damages. The alleged malpractice occurred before his bankruptcy action, but it was not disclosed on his asset schedule. The question of whether it was Doherty's intent to conceal his claim until bankruptcy proceedings closed—so he can keep any potential recovery instead of satisfying his creditors—is not material; there is certainly a motive and an incentive to try concealing the asset for personal gain. Such concealment undermines the effectiveness of the bankruptcy system. Therefore, the district court did not abuse its discretion when it properly recognized judicial estoppel as applicable to situations of non-disclosure of an asset in an earlier bankruptcy proceeding.

## 2. Doherty is Charged With Knowledge of His Claim Against Respondents.

Judicial estoppel "takes into account . . . what the [estopped] party knew, or should have known, at the time the original position was adopted. Thus, the knowledge that the party possesses, or should have possessed, at the time the statement is made is determinative as to whether that person is 'playing fast and loose' with the court." *Heinze v. Bauer*, 145 Idaho 232, 236, 178 P.3d 597, 601 (2008). Judicial estoppel, however, should "only be applied when the party maintaining the inconsistent position either did have, or was chargeable with, full knowledge of the attendant facts prior to adopting the initial position." *McKay v. Owens*, 130 Idaho 148, 155, 937 P.2d 1222, 1229 (1997). Bankruptcy rules require disclosing all existing and potential assets. 11 U.S.C. §§ 521(1), 541(a)(7). This duty continues during the pendency of the bankruptcy. *Burnes*, 291 F.3d at 1286. "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Wood*, 141 Idaho at 686, 116 P.3d at 16 (quoting *Hamilton*, 291 F.3d at 1286). It is the knowledge that a party has or is chargeable as having that is considered, not the intent of the party. *McKay*, 130 Idaho at 155, 937 P.2d at 1229.

In *Wood*, A & J Construction (the debtor) was involved in a joint venture with Wood and subsequently filed for bankruptcy. 141 Idaho at 683–84, 116 P.3d at 13–14. A & J Construction maintained that it honestly did not believe its interest in the joint venture was an asset. *Id*. This Court found that the corporation was aware of the joint venture and should have disclosed the asset. *Id.* at 686, 116 P.3d at 16. We rejected A & J Construction's argument that it was unaware the joint venture constituted an asset and held that a debtor's subjective determination of an asset's value is irrelevant. *Id.* The determinative question was whether there was knowledge of the asset—we did not inquire into the intent to conceal the asset.

The case of *McKay v. Owens* involves a suit by a parent against the attorney she hired to represent her child in a medical malpractice suit. 130 Idaho at 150, 937 P.2d at 1224. After agreeing to a settlement on the medical malpractice claim, the parent sued her attorney asserting that the agreement was signed without her consent and that the damages were insufficient. *Id.* at 151, 937 P.2d at 1225. The parent in *McKay* had knowledge of the agreement because in court and on the record she "agreed to the settlement," and "clearly registered [her] agreement to the settlement." *Id.* But in opposition to judicial estoppel, the parent asserted that she never "*meant*" to approve the settlement but "*intended*" to file the legal malpractice claim. *Id.* at 154, 937 P.2d

6

at 1228 (emphasis added). We upheld imposition of judicial estoppel, because the knowledge of a party is relevant, not the party's intent. *See id.* at 154–56, 937 P.2d at 1228–30.

In *Heinze v. Bauer*, a client sued his divorce attorney for negligently recommending that he accept the property division settlement in his divorce proceeding. Again, the question was whether the party was "*chargeable* with full knowledge" 145 Idaho at 239, 178 P.3d at 604 (emphasis in original). The client accepted the property division agreement in court, but he subsequently argued that he failed to understand the settlement agreement, and that the agreement lacked clarity because of notations and strikeouts. *Id.* Nonetheless, the client was "chargeable with full knowledge of the attendant facts prior to the in court stipulation. [He] was intimately familiar with the assets and liabilities of the community estate prior to the settlement." *Id.* at 239, 178 P.3d at 604. Furthermore, he met with his attorney about the settlement, he reviewed his wife's credit card purchases, he notated the settlement with his concerns, and he had opportunity to ask the magistrate questions. *Id.* Consequently, judicial estoppel was appropriate despite the client's subjective state of mind.

In the current matter, the district court found that, eight months before Doherty filed for bankruptcy, he believed that but for Dr. Dixon's alleged malpractice he would have retained full eyesight in his injured eye. When Doherty filed bankruptcy, before filing this suit against Respondents, Doherty failed to list his potential claim as an asset. At no time while the bankruptcy was pending did Doherty seek to amend his asset schedule—even after the lawsuit was filed. Doherty signed an affidavit asserting that his non-disclosure was made in good faith and without the intent to deceive. Doherty contends that the district court did not read the assertions in his affidavit in the light most favorable to him as the non-moving party and therefore abused its discretion by finding that he possessed the requisite knowledge for judicial estoppel. Even assuming that Doherty is correct that the district court failed to properly weigh the inferences in his affidavit (or even if the district court discounted Doherty's assertions altogether), the inferences drawn from Doherty's affidavit do not implicate the knowledge that Doherty is charged with having, because it speaks to his intent to conceal. Doherty's own brief articulates the inference drawn from his affidavit as follows: "[H]e had no intention to conceal his lawsuit against Dr. Dixon and [Blackfoot Medical Clinic] as an asset in the bankruptcy proceeding." Yet, nowhere does Doherty claim that he was *unaware* of his claim against Respondents. Based on this inference, Doherty created an issue of fact with his affidavit, but hardly a *material* fact: Doherty's subjective intent is irrelevant.

There is a distinction between a party's intent to play fast and loose with the judicial system and the knowledge that they are charged with possessing. We have consistently rejected opportunities to inquire into a party's subjective state of mind, and instead question whether the party seeking to avoid judicial estoppel was sufficiently aware of the facts giving rise to application of judicial estoppel. The fact that the bankruptcy proceeding was filed before the malpractice action is not material, because Doherty was aware of Dr. Dixon's potential malpractice before bankruptcy proceedings; did not claim the potential asset; and did not amend his asset schedule after implementing this suit against the Respondents while his bankruptcy was still pending. Therefore, Doherty possessed the requisite knowledge for the application of judicial estoppel.

3.   *Doherty's Subsequent Reopening and Amending of His Bankruptcy Assets Does Not Avoid Application of Judicial Estoppel.*

Whether a party's reopening of his or her bankruptcy proceeding and amending his or her asset schedule to reveal an undisclosed cause of action avoids application of judicial estoppel in the non-disclosed proceeding is an issue of first impression in Idaho. But numerous other jurisdictions—including many federal circuits—have examined this issue and held that reopening bankruptcy proceedings will *not* cure non-disclosure to a bankruptcy court so as to avoid application of judicial estoppel.[1]

---

[1]   The Sixth Circuit held that permitting such a cure "would encourage gamesmanship since [the debtor] only fixed her filing after the opposing party pointed out that those filings were inaccurate." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 481 (6th Cir. 2010). The Eleventh Circuit in *Burnes* found that permitting a party to "re-open the bankruptcy case, and amend his filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them." 291 F.3d at 1288. There, the Eleventh Circuit reaffirmed this earlier rejection of the reopening cure:

> Allowing [a debtor] to back-up, re-open the bankruptcy estate, and amend his bankruptcy filing, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors assets.

*Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1297 (11th Cir. 2003) (citing *Burnes*, 291 F.3d at 1284) (internal citations and quotations omitted). The Tenth Circuit spoke disfavorably about the reopening cure because permitting a party to reopen "his bankruptcy only after his omission had been exposed would suggest that a debtor should consider disclosing potential assets only if he is caught concealing them." *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1160 (10th Cir. 2007). The Bankruptcy Court for the Eastern District of California rejected the reopening cure by holding that such reopening does not cure or excuse the failure to declare all interests. *Rose v. Beverly Health & Rehab Serv., Inc.*, 356 B.R. 18, 27 (Bankr. E.D. Calif. 2006). The Third Circuit uses similar reasoning in strictly enforcing judicial estoppel as opposed to lesser sanctions. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 324, 325 (3d Cir. 2003) ("allowing . . . the lesser sanction . . . would send a message that a debtor should consider disclosing potential assets only if he is caught concealing them). The Sixth Circuit permits the reopening cure when the assets were not disclosed due to inadvertence or mistake. *See Finney v. The Free Enter. Sys., Inc.*, 2011 WL 1157696 at *2 (holding that the debtor's misunderstanding that a claim was required to be

Doherty urges us to adopt the Georgia approach. But the Georgia approach is incompatible with the current state of Idaho law. First, the Georgia approach considers which court is manipulated by non-disclosure and leaves it to that court to impose sanctions. However, judicial estoppel protects the judicial *system*—not merely the enforcing court. *See Wood*, 141 Idaho at 686, 116 P.3d at 16. Permitting the reopening cure as a defense to judicial estoppel provides an incentive for debtors to conceal potential causes of action until the opposing party identifies the concealment and objects, but no incentive to disclose all assets: If the cause of action is disclosed and goes unnoticed, then the debtor can recover free from the claims of his discharged creditors. But if the non-disclosure is noticed, the debtor simply needs to reopen and amend his schedule. Indeed, Doherty's concealment of this cause of action from the bankruptcy court nearly went unnoticed. Respondents only discovered Doherty's bankruptcy filing less than two months before the jury trial was set to begin.

Second, Doherty and Georgia make an unpersuasive argument that it is inequitable to deny the reopening cure. Georgia permits the reopening cure so bankruptcy creditors will not lose their potential recovery. *Jowers v. Arthur*, 537 S.E.2d 200, 201 (2000). The Bankruptcy Code provides that title to the debtor's assets, including causes of action that belong to the debtor when bankruptcy is filed, vest in the bankruptcy estate. *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008). Property that is not disclosed on the asset schedule, or otherwise administered by the time the bankruptcy case closes, remains property of the bankruptcy estate forever. *An-Tze Chang v. K & S Diversified Investments, Inc.*, 308 B.R. 448, 461 (9th Cir. 2004); *U.S. ex rel. Gebert v. Trans. Admin. Serv.*, 260 F.3d 909, 913 (8th Cir. 2001). As to causes of action, the trustee of the bankruptcy estate is the only party with standing to prosecute causes of action belonging to the estate. *Kane*, 535 F.3d at 385.

As the district court properly noted, once Doherty filed for bankruptcy, the potential tort claim he had against Respondents was no longer Doherty's to assert. It became an asset of the bankruptcy estate for the bankruptcy trustee to assert. The district court recognized that this cause of action belongs to the trustee of the bankruptcy estate and substituted the trustee as a plaintiff to this claim. Such a result is equitable because Doherty's bankruptcy creditors can potentially recover; it moots the concerns expressed by Georgia that alleged tortfeasors would not be held responsible for their torts, *Jowers*, 537 S.E.2d, 200, 203; and it maintains the integrity of the judicial system by eliminating the incentive to conceal an asset in bankruptcy

included in the asset schedule and lack of bad faith was a sufficient to avoid judicial estoppel under the mistake exception).

until discovered. Therefore, Doherty's reopening and amending of his bankruptcy assets does not avoid application of judicial estoppel.

       4.       *The Inadvertence-or-Mistake Exception to Judicial Estoppel is Satisfied Only if the Debtor Lacks Knowledge of the Undisclosed Claim or has No Motive to Conceal the Claim.*

The final question regarding the application of judicial estoppel is whether the inadvertence-or-mistake exception to judicial estoppel is applicable. Doherty maintains that his nondisclosure is the result of mistake or inadvertence because his non-disclosure was made in "good faith," and without the intent to conceal. Doherty equates inadvertence or mistake with the absence of intent.

Judicial estoppel is intended to prevent abuse of the judicial process. *McKay*, 145 Idaho at 235, 178 P.3d at 600. Judicial estoppel will not be applied if the inconsistent positions are based only on inadvertence or mistake. *Id.* It is widely recognized that judicial estoppel does not apply to good faith mistakes. 31 C.J.S. *Estoppel and Waiver* §186 (2012). Following the advice of counsel is not the equivalent of inadvertence or mistake. *Wood*, 141 Idaho at 688, 116 P.3d at 16; *see also Cannon-Stokes v. Potter*, 453 F.3d 446, 448–49 (7th Cir. 2006); *In re Coastal Plains, Inc.*, 179 F.3d 197, 213 (5th Cir. 1999); *Tokheim v. Ga.-Pac. Gypsum LLC*, 147 Idaho 737, 748, 215 P.3d 457, 468 (2009). Thus, the inadvertence-or-mistake exception is only applicable where it negates the knowledge that the estopped party actually had, or that he or she is reasonably charged with having at the time the estopped party adopted his or her original position. *See Heinze*, 145 Idaho at 239, 178 P.3d at 604 (examining whether the estopped party "should have recognized any mistakes" in his original position).

Doherty asserts that because his omission was made in good faith, it satisfies the inadvertence-or-mistake exception to judicial estoppel. It is true that some courts have interpreted the inadvertence-or mistake-exception as denoting bad faith. *See Thompson v. Cont, Airlines*, 18 S.W.3d 701 (Tex. App. San Antonio 2000). But the majority of jurisdictions apply the inadvertence-or-mistake exception only if the debtor lacks knowledge of the undisclosed claim or has no motive for its concealment. *Eastman*, 493 F.3d 1151 (finding the "overwhelming weight of authority" as supporting this position); *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598 (5th Cir. 2005) (holding that debtor must demonstrate that she was unaware of the of facts giving rise to her claim during bankruptcy, not merely disclosure requirements); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002); *In re Coastal Plains*, 179 F.3d 197 (5th Cir. 1999). Courts examining this exception apply an objective standard. *See Benton v. Ryan's*

10

*Family Steakhouse*, 222 F.R.D. 112 (S.D. Miss. 2004) ("[debtor] plainly had motive to conceal her claim, of which she had knowledge, and her current professed lack of bad faith and unintentional non-disclosure do not amount to 'inadvertence'"). This approach is consistent with Idaho law: the inadvertence-or-mistake exception applies where the facts alleged negate the knowledge chargeable to the estopped party at the time he asserted his original position.

In *Heinze*, the estopped party sought to sue his attorney for negligently recommending he accept a property division settlement in his divorce. *Heinze*, 145 Idaho at 234, 178 P.3d at 599. The estopped party in *Heinze* claimed that he failed to recognize mistakes in the agreement and that he did not understand the agreement he was entering. *Id.* at 239–40, 178 P.3d at 604–05. Whether these circumstances negated the knowledge he was charged with having, this Court found that he had the opportunity to ask the magistrate questions, he examined the settlement and made notations, and he tracked his wife's purchases. *Id.* The knowledge that the estopped party is charged with having is *determinative*. *Id.* at 235, 178 P.3d at 600 (citing *McKay*, 130 Idaho at 155, 937 P.2d at 1229). Therefore, judicial estoppel was appropriate.

In *Wood*, a joint venture was not disclosed to the bankruptcy court. The estopped party argued that the non-disclosure "was not because of deliberate intention . . . to mislead the bankruptcy court." *Wood*, 141 Idaho at 686, 116 P.3d at 16. Rather, the joint venture was not disclosed because of the efforts and advice of the attorneys. *Id.* The estopped party sought the relief of the inadvertence or mistake exception. *See id.* We held "that following the advice of counsel is not equivalent to inadvertence or mistake . . . ." *Id.* at 687, 116 P.3d at 17. In that case, regardless of the estopped party's intentions, the estopped party was ultimately aware of the potential asset and did not disclose it. *Id.*

Here, even though Doherty claims inadvertence or mistake, Doherty had knowledge of the facts giving rise to his claim against Respondents at the time he filed for bankruptcy, and during his bankruptcy proceeding. Therefore, he did not lack knowledge. Also, whether or not he intended to conceal this potential asset is irrelevant: objectively, there was a motive for Doherty to conceal this claim. Doherty's affidavit does not raise any facts that negate the knowledge he was charged with having and therefore his lack of bad faith alone is not sufficient to avoid judicial estoppel. The only two inferences the district court could draw from Doherty's affidavit were (1) that he was unaware he was required to disclose this cause of action on his asset schedule (i.e., he was ignorant of the law), or (2) that his legal counsel failed him. The district court reasonably disposed of these two inferences, which was unnecessary because neither of

these inferences negates the knowledge with which Doherty is charged nor his potential motive to conceal.

Therefore, the inadvertence-or-mistake exception does not apply to Doherty's non-disclosure.

**B.** **Neither Party is Entitled to Attorney Fees, But Costs are Awarded to Respondents.**

Doherty claims he is entitled to attorney fees pursuant to I.C. § 12-121 and Idaho Appellate Rule 41 and costs pursuant to Idaho Appellate Rule 40. The Respondents request attorney fees under I.C. §12-121 and Idaho Appellate Rule 41 and costs pursuant to Idaho Appellate Rule 40.

Idaho Appellate Rule 41 provides "any party seeking attorney fees on appeal must assert such a claim as an issue presented on the first appellate brief filed by such party . . . ." Doherty and the Respondents each properly raised and requested attorney fees in their first briefs.

The Court is permitted to award fees to a prevailing party in certain limited circumstances as authorized by I.C. § 12-121. *Owner-Operator Indep. Drivers Ass'n v. Idaho Pub. Utils. Comm'n*, 125 Idaho 401, 408, 871 P.2d 818, 825 (1994). But attorney fees are not awardable as a matter of right. *Id.* They should only be awarded when the court believes "that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Id.* Attorney fees will not be awarded for arguments that are based on a good faith legal argument. *E.g.*, *Backman v. Lawrence*, 147 Idaho 390, 401, 210 P.3d 75, 86 (2009).

In the present case, Doherty argued the elements of judicial estoppel were not met in the current matter despite very clear and very heavy authority holding that judicial estoppel will apply to interests not disclosed in a prior bankruptcy proceeding. But Doherty made a good faith argument that his omission was not intentional and therefore fell within the ambit of the inadvertence-or-mistake exception. Since this issue is unsettled in Idaho and other courts have addressed this exception in terms of intentionality, attorney fees will not be awarded. Respondents in this case defended what they saw as a proper order from the district court. Thus, neither party is entitled to attorney fees.

Idaho Appellate Rule 40 awards costs "as a matter of course to the prevailing party unless otherwise provided by the law or order of the Court." Since the Respondents are the prevailing party on appeal, they are awarded costs.

**VI. CONCLUSION**

We affirm the district court's dismissal of Doherty's claims under the doctrine of judicial estoppel. Costs on appeal are awarded to Respondents as the prevailing party.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON, CONCUR.