# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48975

SCOTT HERNDON, JEFF AVERY, )
IDAHO SECOND AMENDMENT )
ALLIANCE, INC., and SECOND )
AMENDMENT FOUNDATION, INC. )   Boise, February 2023 Term
)
   Plaintiffs-Appellants, )   Opinion Filed: June 22, 2023
)
v. )   Melanie Gagnepain, Clerk
)
CITY OF SANDPOINT, FESTIVAL )
AT SANDPOINT, INC. )
)
)
   Defendants-Respondents. )
_____ )

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Lansing L. Haynes, District Judge.

The district court's judgment is affirmed.

Law Offices of Donald Kilmer, P.C., Caldwell, and Alex Kincaid Law, Emmett, attorneys for Appellants Scott Herndon, Jeff Avery, Idaho Second Amendment Alliance, Inc., and Second Amendment Foundation, Inc. Donald Kilmer argued.

Lake City Law Group PLLC, Coeur d'Alene, attorneys for Respondent City of Sandpoint. Katharine B. Brereton argued.

Bistline Law, PLLC, Coeur d'Alene, attorneys for Respondent Festival at Sandpoint, Inc. Arthur M. Bistline argued.

_____

STEGNER, Justice.

This appeal concerns whether a private party that leases public property from an Idaho municipality may govern those who come and go from its property during the lease. The short answer is yes.

This case stems from a 2019 lease by the City of Sandpoint ("the City") to The Festival at Sandpoint ("The Festival"), a nonprofit corporation (collectively, "the Respondents"), to operate

1

a multi-day music concert series in War Memorial Field Park ("War Memorial Field"). The Festival has a long-standing policy of prohibiting festival patrons from bringing weapons, including firearms, into the event. On August 9, 2019, Scott Herndon and Jeff Avery purchased tickets to the festival and attempted to enter. Avery openly carried a firearm and Herndon possessed a firearm either on his person or in a bag (the record is unclear on this point). Security personnel for the event denied entry to both. After discussions with a City police officer and the City's attorney, who was coincidentally attending the same event in his private capacity, Herndon and Avery eventually left the music festival and received a refund for their tickets.

Herndon, Avery, the Idaho Second Amendment Alliance, Inc., and the Second Amendment Foundation, Inc. (collectively, "the Appellants"), subsequently sued the City and The Festival. They asserted several claims, including seeking injunctive relief prohibiting the Respondents from violating the Idaho and United States Constitutions, particularly the Second Amendment and the Idaho Constitution's provision securing the right to keep and bear arms in public for all lawful purposes. The district court ultimately granted the Respondents' motions for summary judgment, awarded both the City and The Festival attorney fees and costs, and dismissed all the Appellants' claims with prejudice. The Appellants timely appealed. For the reasons discussed below, we affirm the district court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

The City is an Idaho municipal corporation in Bonner County, Idaho. The Festival is an Idaho nonprofit corporation. The City owns War Memorial Field, which makes it public property. On July 30, 2019, the City executed a written lease agreement with The Festival, leasing War Memorial Field to The Festival from July 28, 2019, through August 15, 2019. During that time, The Festival put on a series of concerts at War Memorial Field. The concert series is called "The Festival at Sandpoint" ("music festival"). During the duration of the lease, The Festival was granted possession, use, and occupancy of all of War Memorial Field. At the end of the lease, War Memorial Field reverted to the City.

---

[1] Both parties submitted statements of "undisputed" fact in their briefing—though the competing statements conflict. Even so, Herndon uploaded a video of his attempt to enter the venue to YouTube. The City requested that the district court take judicial notice of the video. The City acknowledged it shows an undisputed record of the events outside The Festival. While the import of what occurred at the entrance to the music festival is contested, what took place is undisputed.

Under the lease, The Festival paid $1.25 to the City for each ticket sold. The Festival was required to pay for electrical charges incurred during the lease, but the City paid the cost of water and sewer. The lease required The Festival to provide its own general liability insurance to cover any losses or damages to any person from the operation of the music festival, and The Festival had to name the City as an additional insured for liability coverage of at least $1,000,000. The Festival was required to provide "adequate security" at no cost to the City. Security personnel were responsible for safety and control measures for music festival attendees and performers. Sandpoint police officers were made available to provide more assistance to The Festival's security if requested. That security was available to The Festival at the cost of paying for those services. The Festival was also required to develop a security services plan, which included a plan for traffic management. According to the lease, The Festival was responsible for security at the music festival, and City police were responsible for public safety outside the festival, but within the City of Sandpoint.

Aside from security and safety provisions, the lease separately identified a series of agreements and allocated responsibilities between the City and The Festival. The City and The Festival agreed to limit the maximum occupancy of the music festival to 4,000; The Festival was solely responsible for ensuring the concert remained within the City's noise limits; and The Festival had to arrange public transportation, parking, and signage.

The Festival maintained a rule that prohibited attendees from possessing weapons, including firearms, inside the venue. That rule varied from the statutory requirements of Idaho Code section 18-3302J, which explicitly preempts cities, counties, or any other political subdivision from adopting or enforcing a rule or regulation that regulates, among other things, firearm ownership, possession, or carrying. I.C. § 18-3302J(2). The statute does not apply to private entities. *Id*. The Festival adopted its rule twenty years earlier and employed it each year during the concert series. In 2018, The Festival created a security team to screen patrons for firearms and other weapons. This team remained in place in 2019 to screen patrons for weapons before entering the festival.

On August 9, 2019, Herndon and Avery arrived at War Memorial Field and attempted to gain access to the music festival. Both were carrying firearms when they arrived and attempted to go through security. Avery was openly carrying a firearm and Herndon was carrying a bag, but it is unclear whether his firearm was in the bag or whether he was also openly carrying. Herndon

3

and Avery stood in line and waited to have their bags searched by the security team. Herndon handed his bag to security personnel, at which time a member of security said, "Sorry, sir, no firearms."[2] Security called Mark Ogg, the lead member of The Festival's gate security, who reiterated the firearm policy. Ogg gave Herndon and Avery the option of securing their firearms in their vehicle and returning to the venue or refunding their tickets, but explained that if Herndon and Avery insisted on entering, they would be cited for trespassing.

Herndon tried to continue the conversation with Ogg, but Ogg signaled for a police officer to come over. When the uniformed officer approached, Ogg told the officer that Herndon and Avery were refusing to leave. Herndon clarified that he was not "refusing" to leave, but he wanted Ogg to explain the law that allowed The Festival to prohibit firearms on public property. The uniformed police officer explained to Herndon that, as long as he was not past the gate, he was not the officer's problem. Herndon tried to engage further with the officer, but the officer walked away.

Sandpoint's city attorney happened to be standing outside the venue and was watching Ogg and Herndon interact with security. The attorney was in casual clothing to attend the concert in his personal capacity. Herndon approached the attorney and asked if he was the City Attorney. Herndon then asked Ogg if the City Attorney had reviewed the policy since "it's his property." The attorney responded, "It's private property."

Herndon questioned the attorney about what the City's position would be if he and Avery insisted on entering the music festival. Ogg and the attorney reiterated that, if Herndon and Avery tried to enter, The Festival would sign a citizen's complaint against them for trespassing. Herndon and Avery thanked Ogg and the attorney and left with Ogg to receive refunds for their tickets.

B. Procedural Background

The Appellants filed a complaint against the Respondents seeking declaratory relief (Count 1) and injunctive relief (Count 2), and claiming damages for conspiracy to deprive the Appellants of their constitutional rights to bear arms made actionable by 42 U.S.C. section 1985 (Count 3). The complaint also alleged violation of the Appellants' Second Amendment rights made

---

[2] The parties agree that a video recording of the event accurately portrays the interaction that occurred outside the venue, and both cite to that video on YouTube. However, we note that any quoted dialogue in this opinion is from the record, not from our own review of the video recording on YouTube.

actionable by 42 U.S.C. section 1983 (Count 4); violation of the Appellants' Fourth Amendment rights made actionable by 42 U.S.C. section 1983 (Count 5); and violation of the Appellants' Fourteenth Amendment right to Equal Protection under 42 U.S.C. section 1983 (Count 6). The complaint sought a declaratory judgment that Idaho Code section 18-3302J preempts the field of firearm regulation and that the City cannot ban firearms from War Memorial Field. While section 3302J(1) invokes the Second Amendment and Article I, section 11 of the Idaho Constitution, the Appellants do not separately raise a claim under the Idaho Constitution. The complaint's prayer for injunctive relief sought to compel the City to require lease terms guaranteeing compliance with Idaho law for regulating possession of firearms in public.

The Appellants, the City, and The Festival each moved for summary judgment. The district court heard oral arguments on April 26, 2021, and took the motions under advisement. During that hearing, the Appellants abandoned their fifth claim, which alleged that the City had violated the Appellants' Fourth Amendment rights. In June 2021, the district court issued a memorandum decision and order granting the City's and The Festival's motions for summary judgment on all remaining claims. A judgment dismissing all of the Appellants' claims against the City with prejudice was entered on June 10, 2021. A judgment dismissing all of the Appellants' claims against The Festival with prejudice was entered on June 14, 2021.

On June 24, 2021, the City moved for costs and attorney fees under Idaho Rule of Civil Procedure 54(d) and (e) and Idaho Code sections 10-1210 and 12-117. On June 28, 2021, The Festival moved for costs and attorney fees under the same rules and statutes.

The Idaho Rules of Civil Procedure require that any objections to costs and attorney fees must be filed within fourteen days of service of a memorandum of costs. *See* I.R.C.P. 54(d)(5); I.R.C.P. 54(e)(6). The Rule also states "[f]ailure to timely object to the items in the memorandum of costs constitutes a waiver of all objections to the costs claimed." I.R.C.P. 54(d)(5). Even so, more than two months later, on August 31, 2021, the Appellants filed an untimely non-objection to the motion for costs and an equally untimely objection to the request for attorney fees. On September 9, 2021, the Appellants moved for relief from the 14-day window to object. All parties briefed the issue. Following a hearing, the district court denied the Appellants' motion as untimely and awarded attorney fees and costs to the City and The Festival as the prevailing parties. The Appellants appealed both the decision granting summary judgment and the district court's awards of attorney fees.

5

## II. ISSUES ON APPEAL

1.      Did the district court err in applying the doctrine of judicial estoppel to the Appellants' claims for declaratory judgment and injunctive relief?

2.      Is a private lessee bound by state laws which limit a city's right to restrict possession of firearms?

3.      Did the district court err when it denied the Appellants' motion for an extension of time or relief from the deadline to object to the City's and Festival's motions for costs and attorney fees?

4.      Is either party entitled to an award of costs and attorney fees on appeal?

## III. STANDARDS OF REVIEW

"This Court employs the same standard as the district court when reviewing rulings on summary judgment motions." *Owen v. Smith*, 168 Idaho 633, 640, 485 P.3d 129, 136 (2021) (quoting *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140–41, 456 P.3d 201, 209–10 (2019)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting I.R.C.P. 56(a)). "A moving party must support its assertion by citing particular materials in the record or by showing the 'materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s].'" *Id.* (quoting I.R.C.P. 56(c)(1)(B)). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.'" *Id.* at 641, 485 P.3d at 137 (quoting *Trumble*, 166 Idaho at 141, 456 P.3d at 210). A "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.*

The district court's decision on the application of judicial estoppel is reviewed for an abuse of discretion. *Sword v. Sweet*, 140 Idaho 242, 252, 92 P.3d 492, 502 (2004). In determining whether a district court has abused its discretion, this Court asks (1) whether the district court correctly perceived the issue as one of discretion; (2) whether it acted within the outer boundaries of its discretion; (3) whether it acted consistent with applicable legal standards; and (4) whether it reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

IV. ANALYSIS

The Appellants assert that the "trial court's deployment of judicial estoppel . . . is the gravamen of this appeal." While the district court's reliance on judicial estoppel presents a noteworthy issue, it is hardly the gravamen of this appeal. Instead, the truly fundamental question, which is grounded on long-standing principles of property law, is whether a leaseholder may govern those who come and go from its property, and what, if anything, they may bring with them. That said, we will address the question of judicial estoppel first, since the district court precluded the Appellants from seeking any relief on their state law claims on this basis. We will then address the Appellants' federal law claims and their challenges to the district court's awards of attorney fees and costs.

**A. The district court erred in applying judicial estoppel against the Appellants based on allegations in their complaint.**

The Appellants asserted two state law claims in their complaint: Count One requested a declaratory judgment that the City either lacked the power to ban firearms at War Memorial Field, or that The Festival was bound to comply with Idaho Code section 18-3302J, which expressly prohibits any "county, city, agency, board or any other political subdivision of this state [from] adopt[ing] or enforc[ing] any law, rule, regulation, or ordinance which regulates in any manner the . . . possession . . . of firearms or any element relating to firearms and components thereof, including ammunition." Count Two sought injunctive relief compelling the City to require The Festival to comply with Idaho laws regulating possession and carrying of firearms. In its memorandum decision, the district court found that because the Appellants' complaint alleged both that the City leased the park to The Festival and contested the validity of the lease, it was judicially estopped from attacking the validity of the lease to obtain relief. The district court granted summary judgment to the City and The Festival based on this legal doctrine.

The Appellants argue the district court's use of judicial estoppel constituted error. The Appellants do not challenge the court's decision to dismiss Count Two (injunctive relief), but they make several arguments why the district court erred in dismissing Count One based on judicial estoppel.

Neither Respondent raised the doctrine of judicial estoppel in their briefing below. The district court considered the issue sua sponte and found the following:

The [City and The Festival] have each argued that because of the lease of [War Memorial Field] to the Festival, the Festival has all of the rights of a leaseholder to control the attendees at its events, including the banning of firearms possession.

It should be noted that [Appellants'] response to [the City's and The Festival's] position is an attack on the nature of the lease for the purpose of arguing against [the City's and The Festival's] leaseholder argument. This Court finds that [*Appellants*] *are judicially estopped from attacking the validity of the lease*.

[Appellants] have sought entry to the courts for their requested judicial declarations and injunctive relief via the Idaho Declaratory Judgment Act. I.C. § 10-1202:

> Any person . . . whose rights . . . are affected by a . . . contract . . . may have determined any question of . . . validity arising under the . . . contract . . . and obtain a declaration of rights, status . . . thereunder.

[Appellants'] initial factual assertion, at page 1 of the Complaint, states that the City leases [War Memorial Field] to the Festival and [Appellants'] Memorandum in support of Motion for Summary Judgment, at page 3, states that for more than 20 years (including 2019) the City and Festival have entered into "agreements to rent" [War Memorial Field]. Thus, [Appellants] have engaged in impermissible contradictory positions by invoking the existence of the lease and also attacking the existence of the lease. The attack consisted of argument that the City had not properly followed the Idaho Municipal Corporations Code, § 50-1409, to have validly leased public property to a private entity.

The doctrine of judicial estoppel is an act of equity by the court that can be invoked at the court's discretion. *Sword v. Sweet*, l40 Idaho 242, 252 (2004). It precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. *McKay v. Owens*, 130 Idaho 148 (1997). The doctrine is designed to safeguard the orderly administration of justice, and for the dignity of judicial proceedings. It is intended to prevent a litigant from playing fast and loose with the courts.

(Emphasis added).

The Appellants maintain that this conclusion was erroneous because Idaho Rule of Civil Procedure 8 governs the standards applicable to complaints, and that rule explicitly permits pleading inconsistent claims or defenses. The question presented is whether judicial estoppel applies when a party asserts alternative positions in its pleadings on the same claim. We conclude that the Appellants are correct and judicial estoppel does not apply under these circumstances.

"Judicial estoppel precludes a party from advantageously taking one position, then subsequently seeking a second position that is incompatible with the first." *Safaris Unlimited, LLC v. Jones*, 169 Idaho 644, 650, 501 P.3d 334, 340 (2021) (quoting *McCallister v. Dixon*, 154 Idaho 891, 894, 303 P.3d 578, 581 (2013)). "Judicial estoppel is intended to protect 'the integrity of the

judicial system, by protecting the orderly administration of justice and having regard for the dignity of the judicial proceeding.'" *Id.* (quoting *McCallister*, 154 Idaho at 894, 303 P.3d at 581).

Judicial estoppel is concerned with incompatible positions later in litigation—not alternative theories pleaded within the complaint itself. Indeed, as the Appellants note, Idaho Rule of Civil Procedure 8 governs the pleading standard, and nothing in that rule prohibits a party from espousing inconsistent positions. In fact, the rule provides just the opposite. *See* I.R.C.P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Thus, the rule allows for inconsistency in pleading claims or defenses. On the other hand, judicial estoppel

> takes into account . . . what the [estopped] party knew, or should have known, at the time the original position was adopted. Thus, the knowledge that the party possesses, or should have possessed, at the time the statement is made is determinative as to whether that person is 'playing fast and loose' with the court.

*McCallister*, 154 Idaho at 895, 303 P.3d at 582 (quoting *Heinze v. Bauer*, 145 Idaho 232, 236, 178 P.3d 597, 601 (2008)). The doctrine applies "when the party maintaining the inconsistent position either did have, or was chargeable with, full knowledge of the attendant facts prior to adopting the initial position." *Id.* (quoting *McKay v. Owens*, 130 Idaho 148, 155, 937 P.2d 1222, 1229 (1997)). As a result, judicial estoppel does not prevent a party from asserting alternative theories in its pleadings. This is the case for two reasons. First, Rule 8(d)(2) allows alternative statements in the pleadings. Second, the threshold element of judicial estoppel is that a prior judicial *proceeding* exists from which a party's conduct will estop that party from asserting an inconsistent position in a later *proceeding*. *See Riley v. W.R. Holdings, LLC*, 143 Idaho 116, 121–22, 138 P.3d 316, 321–22 (2006) (explaining the doctrine prohibits "a party from assuming a position in one proceeding and then taking an inconsistent position in a subsequent proceeding."). The district court concluded that

> [t]he instant [Appellants] gained the advantage of entry into this lawsuit, at least for declaratory judgment purposes, by invoking the existence of a contract (a lease or "agreement to rent"), and then seek [sic] a second advantage by taking the contradictory position that there is no valid lease. This [c]ourt thus determines that [Appellants] are judicially estopped from attacking the validity of the lease in question.

9

The district court abused its discretion by invoking the doctrine of judicial estoppel in the way that it did.[3] The district court failed to act consistently "with the legal standards applicable" to the choices available in applying judicial estoppel against the Appellants based on their pleadings. *Lunneborg,* 163 Idaho at 863, 421 P.3d at 194. When the district court applied the doctrine here, no prior judicial proceedings had occurred. Further, the Appellants argued in their motion for summary judgment that the lease was defective. Nothing the Appellants put forward suggested (1) an effort to play "fast and loose" with the court, (2) disregard for the judicial system, or (3) a deliberate shifting of positions. It was clear from the outset that the Appellants were challenging the validity of the lease, even though it was undisputed that the City had leased War Memorial Field to The Festival each summer for twenty years.

That said, the error is inconsequential here because the outcome remains the same. The district court reached the correct result in granting summary judgment for the Respondents; it simply got there by applying an incorrect legal theory. "[W]here an order of the district court is correct but based upon an erroneous theory, this Court will affirm upon the correct theory. This doctrine is sometimes called the 'right result-wrong theory' rule." *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (quoting *Idaho Sch. for Equal Educ. Opportunity v. Evans*, 123 Idaho 573, 580, 850 P.2d 724, 731 (1993)).

Thus, while we conclude that the district court's application of judicial estoppel was error, that decision, as we will discuss in detail, did not affect the Appellants' substantial rights because the decision we reach today ends at the same place – with dismissal of the Appellants' lawsuit. *See* I.R.C.P. 61 (explaining that courts "must disregard all errors and defects that do not affect any party's substantial rights"). Because we exercise a de novo standard of review of the summary judgment rulings, we review the Appellants' assertions against the record to determine, as a matter of law, whether their remaining state law claim has merit. As discussed below, we conclude it does not.

---

[3] The district judge did not err when it sua sponte introduced judicial estoppel into this case. While a trial court errs by raising certain affirmative defenses sua sponte, judicial estoppel is an exception to that rule. *See Deon v. H & J, Inc.*, 157 Idaho 665, 668 n.2, 339 P.3d 550, 553 n.2 (2014) (quoting *Sword v. Sweet*, 140 Idaho 242, 252, 92 P.3d 492, 502 (2004)) ("Because [judicial estoppel] is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked *by a court* at its discretion.") (alterations in original) (emphasis added)). The district court's error here was not in introducing judicial estoppel into the proceedings, but in applying it based on the Appellants' pleadings.

**B. The City's lease to The Festival is valid.**

    1. *The legality of the lease.*

Before we discuss the parameters of the lease here, we address the Appellants' claims that the lease should not be classified as a lease because the City violated Idaho Code section 50-1409 when it executed the lease. The Appellants also describe the "lease" as a mere "charade," arguing that while the City can enter into an "agreement" to hold a festival, such an agreement cannot be a lease because construing the "agreement" as a "lease" would allow the City to subvert the plain language of Idaho Code sections 18-3302(3), 18-3302(4), 18-3302(25), and 18-3302J. The challenge for the Appellants is they admit that the City can make "agreements," while also arguing that the City cannot make leases that allow a private party to govern its leasehold. The Appellants' only citation to authority for this proposition is Idaho Code section 50-1409. That statute gives the Appellants no help. The Appellants' argument ignores several other germane and important statutes that weigh against their premise.

The portion of section 50-1409 on which the Appellants rely reads: "The mayor and council may, by resolution, authorize the lease of any property not needed for city purposes, upon such terms as may be just and equitable." Based on this sentence alone, the Appellants argue that there is no lease here because Sandpoint's city leaders failed to make two explicit findings: (1) that War Memorial Field is "not needed for city purposes," and (2) that the terms of the lease are "just and equitable."

The Appellants' argument is flawed for several reasons. The first is that the Appellants improperly focus on the first sentence in the statute to the exclusion of the rest. The remainder of section 50-1409 (that covers the circumstance here) provides

> that the council of a city, upon a vote of one half (1/2) plus one (1) of the members of the full council, may set apart *portions of the public parks, playgrounds or other grounds* to be used from time to time for athletic contests, golf links, agricultural exhibits, ball parks, fairs, rodeos, swimming pools and *other amusements*, and for military units of the state of Idaho or the United States, and may, upon a vote of one half (1/2) plus one (1) of the members of the full council, make and enter into *proper contracts with organizations and associations necessary and proper to carry out the purposes of this provision*.

(Emphasis added). Statutes like this one must be "construed as a whole." *Grace at Twin Falls, LLC v. Jeppesen*, 171 Idaho 287, 292, 519 P.3d 1227, 1232 (2022) (quoting *Breckenridge Prop. Fund 2016, LLC v. Wally Enterprises, Inc.*, 170 Idaho 649, 516 P.3d 73, 81 (2022)). Thus, statutory

11

"[p]rovisions should not be read in isolation, but must be interpreted in the context of the entire document. . . . [T]he Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *Reclaim Idaho v. Denney*, 169 Idaho 406, 427, 497 P.3d 160, 181 (2021) (quoting *In Re Doe*, 168 Idaho 511, 516, 484 P.3d 195, 200 (2021)).

Reading section 50-1409 in this way, the City's execution of the lease here is valid. The City passed a resolution that authorized the lease of War Memorial Field for a "public amusement" as authorized by the statute. The City subsequently voted to approve the lease (a "proper contract") with The Festival. Put simply, the Appellants' argument focuses solely on whether the City may authorize a lease for land that is not in use. But War Memorial Field was continually in use throughout the time frame relevant here. Thus, applying the *entire* statute gives the City power to lease City property for amusements like The Festival.

In addition, Idaho Code section 50-301 empowers municipal corporations to "sue and be sued; *contract* and be contracted with . . . acquire, hold, *lease*, and *convey* property, real and personal . . . ." (Emphasis added). This Court has held that a city's power to lease city property has few limits; it is "a purely discretionary function entrusted to the elected officials . . . and, absent a clear abuse of that discretion, any decision made thereunder will not be overturned on appeal." *Bopp v. City of Sandpoint*, 110 Idaho 488, 491, 716 P.2d 1260, 1263 (1986).

Despite this sweeping authority, the Appellants argue that the City's failure to pass a specific resolution, making the findings about the park's nonuse, is fatal to and invalidates the lease with The Festival. While there is no resolution explicitly authorizing this lease, the City passed Resolution 18-54 on November 20, 2018, which set forth the City's Special Events Policy and Procedures which govern the City's authority to effectuate leases like the one here. On the same day, the City also amended Title 6, Chapter 6 of the Sandpoint City Code, which sets forth the requirements for permitting special events, like concerts, festivals, parades, or rallies. Thus, as we have noted, prior to the execution of the lease, the City exercised its discretion appropriately under Idaho Code sections 50-1401 and 50-1409 in establishing guidelines governing city leases. These procedural steps took place long before the City's execution of the lease under section 50-301. Later, The Festival was issued a Special Event Permit under the authority of the City's authorized code and procedures.

Thus, we take this occasion to reiterate, as we did in *Bopp*, that leaders of Idaho's municipalities, such as the City of Sandpoint, are invested with vast discretion to make decisions

they consider in the City's best interest when leasing or conveying city property. I.C. § 50-1401. That Sandpoint's leaders exercised their discretion here without making findings about War Memorial Field's need for other uses during the two-week term of the lease is irrelevant. There is no contention here that War Memorial Field was not actively in use and a prime venue for the lease. Indeed, the Appellants simply argue that the City's failure to comply with the first sentence of section 50-1409 nullifies the lease. There is no legal authority for such a proposition, particularly considering all of that statute's language. Nor is there any case law that prohibits cities like Sandpoint from contracting for a lease such as the one at issue. Thus, we conclude that the lease is valid under Idaho law.

2. *The Festival, as a private tenant, had full authority to govern and set limits on those who visited the premises of its leasehold.*

The true gravamen of this case is whether a private leaseholder (The Festival) can control its leasehold unburdened by the constraints, demands, or limitations that would otherwise apply to a public property owner (the City). To resolve this question, we rely on common law property principles that establish the rights that exist between a landlord and a tenant.

This Court has long held that a lease is a contract. *See Intermountain Realty Co. v. Allen*, 60 Idaho 228, 233, 90 P.2d 704, 706 (1939) ("A lease is a contract for the possession and profits of lands and tenements on the one side and the recompense of rent or property on the other, or, in other words, a conveyance to a person for life, years, or at will, in consideration of a return of rent, or other recompense."). A real property tenant receives a leasehold interest in realty in exchange for the promise to pay rent periodically. *Krasselt v. Koester*, 99 Idaho 124, 125, 578 P.2d 240, 241 (1978). Thus, "[i]t is the settled law of this state that a lease of real property is a conveyance or encumbrance of real estate." *Thompson v. Ebbert*, 144 Idaho 315, 318, 160 P.3d 754, 757 (2007) (quoting *Intermountain Realty Co.*, 60 Idaho at 232, 90 P.2d at 705). The leasehold interest accords the lessee "both contract rights and a limited ownership interest in the real property," *Krasselt*, 99 Idaho at 125, 578 P.2d at 241, and entitles the lessee to exclusive possession of the property. *Devereaux Mortg. Co. v. Walker*, 46 Idaho 431, 436, 268 P. 37, 39 (1928).

"A common idiom describes property as a bundle of sticks—a collection of individual rights which, in certain combinations, constitute property[.]" *State v. Rebo*, 168 Idaho 234, 241, 482 P.3d 569, 576 (2021) (quoting *United States v. Craft*, 535 U.S. 274, 278 (2002)). Rights to exclude and to use are two of the most crucial sticks in the bundle. *Id.* at 240, 482 P.3d at 575

13

(quoting *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1938 (2019) (Sotomayor, J., dissenting)); *see also State v. Howard*, 169 Idaho 379, 382, 496 P.3d 865, 868 (2021) ("[T]he right to exclude others from one's property is a fundamental tenet of property law. . . .").

The lease between the City and The Festival states that the City "does hereby lease and set over unto The Festival at Sandpoint, Inc., . . . a certain parcel of real property owned by City . . . *for the occupancy and use thereof by The Festival. . . .*" (Emphasis added). As a result, The Festival was granted a possessory interest in War Memorial Field as the lessee of the property. As the holder of the possessory interest, The Festival had the right to the use and benefit of the leased property, which includes the authority to set limitations on those who come onto the property. These principles do not morph depending on the nature of the third-party rights at play. Instead, they are grounded in doctrines basic to the relationship between a landowner and its tenant. This relationship is contractual and grants the tenant the authority to exercise control over the property. As we recognized in *McKay v. Walker*,

> Black's Law Dictionary defines "possessory interest" as "[t]he present right to control property, including the right to exclude others, by a person who is not necessarily the owner." Black's Law Dictionary 1284 (9th ed.2009). The Restatement (First) of Property states that a possessory interest in land exists where a person has: "(a) a physical relation to the land of a kind which gives a certain degree of physical control over the land, and an intent so to exercise such control as to exclude other members of society in general from any present occupation of the land. . . ." Restatement (First) of Property § 7 (1936).

160 Idaho 148, 152, 369 P.3d 926, 930 (2016). Therefore, a tenant has "the right to exclude" as holder of a possessory interest. That right includes the right to limit where or how others enter the leasehold property, or what they bring with them onto the property. The Festival's right to exclude others and set limits on those who access the park during the music festival derives from common law principles—it did not spring from, nor was it limited by the City's statutory obligations as a political subdivision.[4] Moreover, nothing in the applicable statutory authority or case law from this Court establishes that a private lessee of public property enjoys any less or different rights than a private lessee of private property. Thus, The Festival's rights as a tenant, with a "possessory

---

[4] A political subdivision is defined as "*a city*, a county, any taxing district or a health district." I.C. § 12-117(6)(d) (emphasis added).

interest" in War Memorial Field, allowed it, as a private entity, to restrict who could enter the park and what they could bring with them.

3. *The lease does not violate public policy.*

Despite the common law property rights set forth above, the Appellants contend that the lease violates public policy. First, the Appellants contend The Festival cannot hold rights as a private tenant greater than the City's. Second, the Appellants claim that the City's implicit finding that War Memorial Field was "not needed" for City purposes violated public trust and was a misappropriation of public property. Finally, the Appellants claim that the City's "blindness" to The Festival's weapon policy makes the lease unjust and inequitable because it violates Idaho Code section 18-3302J by unconstitutionally infringing on the Appellants' right to bear arms under Idaho's Constitution, Article I, section 11, and the Second Amendment.

The district court did not analyze the public policy issues related to the lease because it held that the Appellants were judicially estopped from attacking its validity. We consider this argument on appeal because it was raised below, and we review this matter de novo. We hold that the lease of War Memorial Field to the Festival was valid and did not violate public policy.

As noted above, a lease is a contract. *Intermountain Realty*, 60 Idaho at 232, 90 P.2d at 706. "Whether a contract violates public policy is a question of law that this Court freely reviews." *Van Orden v. Van Orden*, 170 Idaho 597, 608, 515 P.3d 233, 244 (2022) (citing *Quiring v. Quiring*, 130 Idaho 560, 566, 944 P.2d 695, 701 (1997)). "In general, courts determine whether a contract violates public policy by ascertaining 'whether the contract has a tendency toward . . . an evil' antagonistic to the public interest." *Id.* at 609, 515 P.3d at 245 (emphasis omitted) (quoting *Neustadt v. Colafranceschi*, 167 Idaho 214, 221, 469 P.3d 1, 8 (2020)). "Public policy may be found and set forth in [Idaho's] statutes, judicial decisions or [its] constitution." *Id.* (quoting *Quiring*, 130 Idaho at 566, 944 P.2d at 701).

As discussed above, the City had no duty to make findings under Idaho Code section 50-1409 because War Memorial Field was actively in use by the City. The City voted to approve a process to allow use of the park for special events and that process was followed here, consistent with Idaho Code sections 50-1409 and 50-301. Thus, the Appellants' claims in this regard are groundless. The Appellants also argue that, under this Court's holding in *Bopp*, the City's resolution process was illegitimate. But *Bopp* involved Sandpoint's resolution process as it was governed by section 50-1409 for property (a ramshackle bridge) that was no longer "necessary"

15

for the city. We have now held that this case is governed by the portion of section 50-1409 that validates what the City did, thereby making *Bopp* inapplicable here. Finally, the Appellants argue that the City's behavior "is a gross violation of the public trust and a misappropriation of public property that would violate Idaho Code section 50-1409." This argument is conclusory and unsupported by a plain reading of the statute as a whole.

As noted above, the City passed Resolution 18-54 in 2018, which set forth the City's Special Events Policy and Procedures. On the same day, the City also amended Title 6, Chapter 6 of the Sandpoint City Code, which confirmed the requirements for permitting special events, like concerts, festivals, parades, or rallies. In so doing, as we have already held, the City exercised its discretion appropriately under section 50-1401 long before executing the lease with The Festival. Later, The Festival was issued a Special Event Permit under the authority of the City's code and procedures. These steps lie within the City's discretion, and they align well within what Idaho's law allows the City to do.

Relying on sweeping claims grounded in the Second Amendment, the Appellants ask this Court to second guess, not what is stated in the lease contract (which makes no mention of weapons at all), but the actions of the City's mayor and city council in making their determination to lease to a private entity. Nothing within the terms of the lease between the City and The Festival addresses carrying firearms or restricts the rules that The Festival may adopt while using the park for its private concerts. Beyond that, both the Second Amendment and Article I, section 11 of the Idaho Constitution apply only to government actors, not private parties. Thus, the lease does not violate the public policy stated in Idaho Code section 18-3302J, the Second Amendment, or the Idaho Constitution, Article 1, section 11.

The Appellants' argument is that the City had some obligation as a matter of public policy to be aware of what a private tenant might do to restrict access to War Memorial Field. But in this case, the Appellants have presented no authority for the position that the City had an obligation to do so as a matter of law or policy. *See McGhee through McGhee v. City of Glenns Ferry*, 111 Idaho 921, 921, 729 P.2d 396, 396 (1986) (explaining that when public land is used recreationally, the city is immune from liability). A private tenant's exercise of its rights under the lease does not violate either the state or federal constitution. *See Planned Parenthood Great Nw. v. State*, 171 Idaho 374, 522 P.3d 1132, 1164 (2023) (explaining that the constitution "limits the power of the

16

government," not private citizens). As noted, *Bopp* established that the power of the City to lease city property has few limits. A city's

> power to lease is a purely discretionary function entrusted to the elected officials of the municipality and, absent a clear abuse of that discretion, any decision made thereunder will not be overturned on appeal. *Larsen v. Village of Lava Hot Springs*, 88 Idaho 64, 396 P.2d 471 (1964); *Moore v. Village of Ashton*, 36 Idaho 485, 211 P. 1082 (1922) (courts may not inquire into motives behind legislative enactments or resolutions except as to acts which are purely ministerial). Thus, absent allegation by appellant of any "glaring informality or illegality in the proceedings," *Canady*, 21 Idaho at 88, 120 P. at 833, relating to the resolution approving the lease, we will not disturb the city's determination that the terms of the lease are just and equitable.

*Bopp*, 110 Idaho at 491, 716 P.2d at 1263.

The City acted within its broad discretion, as we declared in *Bopp*, and under the appropriate statutory authority of Idaho Code section 50-1401 to lease War Memorial Field to The Festival. Neither the federal nor the Idaho Constitution limits the City's discretion in cases like this one. The Appellants' argument to the contrary fails.

## C. We affirm the district court's decision granting Respondents summary judgment on Appellants' 42 U.S.C. section 1983 and section 1985 civil rights claims.

The Appellants[5] asserted two claims under 42 U.S.C. section 1983 and one claim under 42 U.S.C. section 1985 for alleged violations of their civil rights. The section 1983 claims allege a violation of the Second Amendment and the Fourteenth Amendment's Equal Protection Clause. The section 1985 claim alleges a conspiracy between the City and The Festival to violate the Second Amendment. While these claims spring from federal statutory authority, the Appellants' arguments rely largely on Idaho statutes.

*1. Section 1983 claims.*

42 U.S.C. section 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the United States Constitution. "Section 1983 does not create any substantive rights; rather it is the vehicle whereby [the Appellants] can

---

[5] We note that the district court found that neither the Idaho Second Amendment Alliance, Inc., nor the Second Amendment Foundation, Inc., have standing to bring these claims. The corporate appellants have not appealed this part of the district court's decision. Thus, we consider these claims only as they apply to Herndon and Avery. *See Gray v. Gray*, 171 Idaho 128, 518 P.3d 1185, 1201 (2022) (quoting *Frogley v. Meridian Joint Sch. Dist. No. 2*, 155 Idaho 558, 565, 314 P.3d 613, 620 (2013)) ("[a]n assignment of error is deemed waived, and will not be discussed if there is no argument contained in the appellant's brief.") (alternations in original).

challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). For a plaintiff to succeed on a section 1983 claim, the plaintiff must establish the violation of a right secured by the Constitution or a federal statutory law, and that such deprivation occurred under color of state law. *Id.*; *see also Hoagland v. Ada Cnty.*, 154 Idaho 900, 910, 303 P.3d 587, 597 (2013). "While the question of what constitutes state action is often a difficult question, prior to answering that question the plaintiff must first establish that [they have] been 'deprived' of a constitutionally protected right in order to establish a cause of action under 42 U.S.C. § 1983." *DeMoss v. City of Coeur D'Alene*, 118 Idaho 176, 179, 795 P.2d 875, 878 (1990). Only after the deprivation of a constitutional right is shown do we look to whether there was state action. Thus we first address the constitutional allegations

    a.  <u>The Second Amendment</u>.

        i.  The Appellants failed to establish a deprivation of a federal constitutional right.

The Appellants contend that City personnel and The Festival security told them they would be arrested if they entered War Memorial Field while exercising their constitutional rights.

In denying these claims below, the district court explained:

> [Appellants] have not alleged that the city has passed an ordinance or engaged in conduct that directly violated [Appellants'] Second Amendment rights. The essence of [Appellants'] argument has been that the [City and The Festival] have engaged in joint conduct, through the lease of [War Memorial Field] to the Festival and Festival's ban of patrons possessing firearms, and that each have intentionally violated [Appellants'] constitutional rights under the Second Amendment. 42 U.S.C. § 1983 provides for a cause of action for deprivation of constitutional rights that occur[s] under color of state action.

We agree with the district court: the Appellants failed to establish that they were deprived of a constitutional right by a government actor. The Appellants put forward *no* argument on appeal to explain how the City or the Festival violated their constitutional rights. Their argument is instead premised on the alleged violation of section 18-3302J. For the reasons discussed above, neither the City nor The Festival violated the statute. However, a violation of state law does not automatically establish a violation of the Second Amendment, which we address first.

        ii.  The Appellants are foreclosed from making section 1983 claims that are based on violation of state law.

The Appellants asserted below both state and federal law claims. The Appellants' complaint put forth two counts seeking declaratory and injunctive relief for violating Idaho's laws regulating firearms. The Appellants separately set forth three counts alleging violations of federal

law. On appeal, the Appellants also argued a state law claim for preemption under their assertion of federal section 1983 claims. In their reply brief, the Appellants make clear their intent was to assert a section 1983 claim based on alleged violations of state law.

The Appellants' state law claim under section 1983 fails. "A 'claim for violation of state law is not cognizable under [section] 1983.'" *Smith v. City & Cnty. Of Honolulu*, 887 F.3d 944, 952 (9th Cir. 2018) (quoting *Cornejo v. Cnty. Of San Diego*, 504 F.3d 853, 855 n.3 (9th Cir. 2007)). This Court has explained that "[s]ection 1983 encompasses violations of *federal statutory law* as well as *constitutional law*." *Bryant v. City of Blackfoot*, 137 Idaho 307, 314, 48 P.3d 636, 643 (2002) (citing *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)) (emphasis added). Indeed, "42 U.S.C. [section] 1983 . . . supplies a remedy for the deprivation under color of state law of *federally protected rights*." *James v. City of Boise*, 160 Idaho 466, 473, 376 P.3d 33, 40 (2016) (emphasis added).

The Appellants' argument to the contrary is simply mistaken. Section 1983 encompasses violations of federal law, not state law. State law claims are not cognizable under section 1983.

As to the asserted federal law claims, the Appellants' conclusory allegations also lack argument, authority, or citation to evidence in the record and, thus, are insufficient to support their position on appeal. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court."); *Owen v. Smith*, 168 Idaho 633, 644, 485 P.3d 129, 140 (2021) (submitting conclusory allegation without corroborating evidence is not enough to raise a genuine issue of material fact).

Thus, we affirm the district court's decision dismissing the Appellants' 1983 claims against the City and The Festival for failing to allege a federal constitutional violation by a government actor. As a result, we do not consider whether the Appellants pleaded an action under color of state law.

b. The Equal Protection Clause.

i. The Appellants failed to allege a constitutionally protected right under the Fourteenth Amendment.

The Appellants argue that the City's and The Festival's policies and practices violate the Equal Protection Clause. In support of this argument, the Appellants contend that the City and The

19

Festival have engaged in purposeful conduct and adverse actions against law-abiding gun owners. The Appellants posit that there is a "micro-climate of antagonism" to this fundamental right in the City of Sandpoint and from some people managing city property and music festivals. The City responds that the Appellants' claims are simply a rehash of their Second Amendment claim stated with different jargon, and that the 1983 claim based on the Second Amendment was properly dismissed. The City argues that the Appellants have not identified what fundamental rights they were denied, yet others were permitted to exercise, to support their claim under the Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Matter of Doe*, 170 Idaho 901, 906–07, 517 P.3d 830, 835–36 (2022) (quoting *City of Cleburne. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). This clause recognizes that individuals on the same legal footing cannot be treated disparately. But that is not what the Appellants have alleged here. As the district court recognized in dismissing this claim:

> This claim fails as a matter of law. The 9th Circuit, in *Teixeira v. City of Alameda*, 822 F.3d 1047,1052 (9th Cir.2016), and *reh'g en banc*, 873 F 3d 670 (9th Cir. 2017) held that an alleged infringement of a Second Amendment right is more appropriately analyzed under the Second Amendment and not the Equal Protection Clause. Such a Second Amendment infringement is not a cognizable claim under the Equal Protection Clause. *Id*. Summary Judgment is granted for [the City and The Festival] as to Claim Six.

The district court's conclusion was correct. The district court below, and the City on appeal, rely on how the Ninth Circuit has addressed "[Second] Amendment claim[s] dressed in equal protection clothing." *Teixeira v. Cnty. of Alameda*, 822 F.3d 1047, 1052 (9th Cir. 2016) *on reh'g en banc*, 873 F.3d 670 (9th Cir. 2017).[6] In *Teixeira*, the Ninth Circuit noted that "[m]erely infringing on a fundamental right" does not implicate the Equal Protection Clause, and "because the right to keep and to bear arms for self-defense is not only a fundamental right . . . but an

---

[6] A three-judge panel of the Ninth Circuit affirmed the district court's dismissal of Teixeira's Equal Protection Clause claims but reversed the dismissal of Teixeira's Second Amendment Claim. *See Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 676 (9th Cir. 2017) (en banc). The case was reheard by an en banc panel of the Ninth Circuit, which reversed portions of the three-judge panel's decision. However, Teixeira did not seek rehearing of the panel's decision on the Equal Protection Clause claim. Thus, the original holding, which we discuss above, stands.

enumerated one, it is more appropriately analyzed under the Second Amendment than the Equal Protection Clause." 822 F.3d at 1052 (internal citation omitted). The *Teixeira* court held that an equal protection challenge based on the alleged infringement of the Second Amendment was "subsumed by" a claim under the Second Amendment and, thus, not a cognizable independent claim under the Equal Protection Clause. *Id*. We agree with this analysis.

The United States Supreme Court has also held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Such logic applies with equal force here. The explicit protection of the Second Amendment (though not actionable here) is where the Appellants' claims must lie. As a result, we hold that the Appellants' Equal Protection Clause claim is duplicative of their Second Amendment claim and does not establish an independent constitutionally protected right for purposes of a section 1983 claim. Thus, we affirm the district court's dismissal of this claim.

2. *Section 1985 claim.*

Section 1985 creates a civil action for damages caused by two or more persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws" and take or cause to be taken "any act in furtherance of the object of such conspiracy." 42 U.S.C. § 1985(3). For the Appellants to prove a section 1985 claim, they must show "(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) (internal quotations mark omitted) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993)).

The Appellants claim that the City and The Festival used a corrupt and illegal process to enter contracts and leases, which establishes a claim under 42 U.S.C. section 1985. As we have held, nothing in the City's conduct in granting The Festival a lease violated the City's vast discretion. Thus, the process was not "illegal."

The City also responds that the Appellants have provided no factual or legal support for either element of their 1985 claim. Below, the district court agreed, concluding:

[Appellants] have presented no factual basis nor legal authority to support that they are members of a suspect or quasi-suspect class to be afforded special scrutiny or protection. Moreover, there is no evidence in this record to support [Appellants'] claim that [the City and The Festival] had, as a motivation for their actions, the intent to deprive [Appellants] of any constitutional right.

The Appellants allege a conspiracy and coordinated effort to frustrate and violate the rights of law-abiding citizens trying to enjoy equal access to public parks and participate in the art and culture in the community. But as the district court recognized, there are no facts in the record to support such a claim. Even if some facts were proffered, the Appellants have not established they experienced race or class-based discrimination. But the Appellants maintain that the plain language of section 1985(3) does not require an allegation of race or class-based discrimination and, instead, suggest the statute covers "the claim of equal protection and the enjoyment of privileges and immunities for exercising fundamental rights[.]"

This Court and the United States Supreme Court have expressly stated that claims under section 1985 require an allegation of "a race or class-based discrimination." *Gibson v. Ada Cnty.*, 142 Idaho 746, 752, 133 P.3d 1211, 1217 (2006). The United States. Supreme Court has explained "[t]he civil-conspiracy prohibition contained in § 1985(3) was enacted as a significant part of the civil rights legislation passed in the aftermath of the Civil War." *Ziglar v. Abbasi*, 582 U.S. 120, 150 (2017) (citing *Carpenters v. Scott*, 463 U.S. 825, 834–837 (1983) (detailing the legislative history of § 1985(3)); *Griffin v. Breckenridge*, 403 U.S. 88, 99–101, (1971) (discussing the legislative history of section 1985(3)); *Great American Fed. Sav. & Loan Assn. v. Novotny*, 442 U.S. 366, 379 (1979) (Powell, J., concurring) (describing section 1985(3) as a "Civil War Era remedial statute")). "The Supreme Court has not defined the parameters of a 'class' beyond race, but the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the [section] 1985(3) defendant disfavors." *Butler*, 281 F.3d at 1028 (quotation omitted).

Thus, we affirm the district court on two grounds. First, even if we were to extend the reach of the section 1985 claim as the Appellants advocate, we agree with the district court's conclusion: "there is no evidence in this record to support the [Appellants'] claim that [the City and The Festival] had, as a motivation for their actions, the intent to deprive the [Appellants] of any constitutional right." What was true below remains true now. Second, the Appellants are not part

22

of a race-based class and are thus not entitled to relief under section 1985. We therefore affirm the district court's decision dismissing the section 1985 claim.

**D. The district court did not err in awarding attorney fees to the City and The Festival.**

The district court entered judgment for the City on June 10, 2021, and judgment for The Festival on June 14, 2021. Both the City and The Festival filed timely motions seeking attorney fees and costs under Idaho Rule of Civil Procedure 54(d) and (e) and Idaho Code sections 10-1210 and 12-117. Objections to the City's motion were due by July 8, 2021, and objections to The Festival's motion were due by July 14, 2021. *See* I.R.C.P. 54(d)(5); I.R.C.P. 54(e)(6). Yet the Appellants failed to file an objection to either motion until August 31, 2021. Ultimately, the Appellants did not object to the request for costs but noted they had "contacted [the City and The Festival] to meet and confer about a stipulated payment of costs, and a stay of the entire attorney fee issue, preserving the Appellants' objection and right to contest any fee award and the amount of any fee award, pending disposition of the pending appeal." The Appellants continued, "[i]f the parties are unable to file a stipulation to handle this matter, the Appellants will file a formal motion to request relief from our tardy response to the [City's and The Festival's] request for attorney fees[.]" Apparently no meeting occurred because on September 9, 2021, the Appellants filed a "Motion for Extension of Time or Relief from Deadline to Object to [the City's and The Festival's] Motion for Attorney Fees and Costs." The Appellants also filed a memorandum in support of the motion.

The Respondents each objected to the Appellants' requests. The district court held a hearing on October 29, 2021, and denied the Appellants' motion for extension of time. In a written order, the district court explained it was within the court's

> discretion to decide whether to extend the time for [Appellants] to object to [the City's and The Festival's] Motion for Costs and Attorney [fees]. The reasons presented by [Appellants] for their failure to timely object unsatisfactorily explained the late filing of the objection. Therefore, the [c]ourt finds that [Appellants] waived their right to object to [the City's and The Festival's] motion for costs and attorneys' fees and the Motion for Extension of Time or Relief from Deadline to Object is denied.

The district court then issued a separate memorandum decision and order re: motions for costs and fees. In that decision, the district court awarded attorney fees to both the Respondents, concluding that the City and The Festival were the prevailing parties in "complex civil litigation involving multiple causes of action, including federal constitutional and civil rights claims, and a

23

compressive [sic] Idaho statutory firearm claim." The district court explained that "persuasive legal research and briefing was required; significant discovery was required before briefing; and these were novel issues of fact and law."

As noted above, under Idaho Rule of Civil Procedure 54(d)(5), objections to costs must be filed within fourteen days of the service of a memorandum of costs:

> Objections to Costs. Within 14 days of service of a memorandum of costs, any party may object by filing and serving a motion to disallow part or all of the costs. The motion does not stay execution on the judgment, exclusive of costs, and must be heard and determined by the court as other motions under these rules. Failure to timely object to the items in the memorandum of costs constitutes a waiver of all objections to the costs claimed.

I.R.C.P. 54(d)(5); s*ee also* I.R.C.P. 54(e)(6) (explaining that any objection to attorney fees must be made in the same manner as an objection to costs under 54(d)(5)). "The awarding of attorney fees and costs is within the discretion of the district court and is subject to the abuse of discretion standard of review." *Breckenridge Prop. Fund 2016, LLC v. Wally Enterprises, Inc.*, 170 Idaho 649, 662, 516 P.3d 73, 86 (2022) (citing *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 140, 357 P.3d 863, 865 (2015)).When reviewing a lower court's decision for an abuse of discretion, this Court applies the four-prong standard from *Lunneborg,* 163 Idaho at 863, 421 P.3d at 194, as set forth above.

On appeal, the Appellants maintain that the district court's findings conflict with the law because a party is not entitled to attorney fees if the issue is one of first impression. While this principle of law is generally correct, as the City notes, the Appellants failed to timely object below which precludes a challenge on appeal. Even more, the Respondents maintain that this issue is now moot because the Appellants have now paid the judgments as to both the City and The Festival. *See Frantz v. Osborn*, 167 Idaho 176, 180, 468 P.3d 306, 310 (2020). We agree with the Respondents and affirm the district court for two reasons: first, the failure to file a timely objection to the motions for attorney fees "constitutes a waiver of all objections to the costs claimed" when those attorney fees are properly authorized by statute or contract. I.R.C.P. 54(d)(5); I.R.C.P. 54(e)(6); *see also Allison v. John M. Biggs, Inc.*, 121 Idaho 567, 570, 826 916, 919 (1992). The district court was within its discretion in finding that the Appellants waived any right to object to the motion for attorney fees because they failed to satisfactorily explain the reasons for the filing about six weeks late. Second, Herndon has voluntarily paid both judgments against the Appellants. As a result, and as Respondents point out, this issue is now rendered moot.

24

Generally, "[a] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Farrell v. Whiteman*, 146 Idaho 604, 610, 200 P.3d 1153, 1159 (2009). . . . "When a judgment debtor voluntarily pays the judgment, the debtor's appeal becomes moot, and it will be dismissed." *Quillin v. Quillin*, 141 Idaho 200, 202, 108 P.3d 347, 349 (2005). "A judgment debtor who wants to preserve the right to appeal, can pay the amount due under the judgment *to the clerk of the court* pursuant to Idaho Code [section] 10-1115. . . ." *Id.*

*Frantz*, 167 Idaho at 180, 468 P.3d at 310 (bracketed alteration in original) (emphasis added).

Since Appellants paid each judgment entered against them directly to the City, rather than to the clerk of the court under Idaho Code section 10-1115, the issue of attorney fees has been rendered moot, and the Appellants are precluded from challenging the award on appeal.

**E. The Festival failed to cross-appeal and we will not consider the issue it posits on appeal.**

The Festival raised an issue in its response brief related to the constitutionality of Idaho Code section 18-3302J. The Festival asks this Court to grant it affirmative relief, holding that the statute is unconstitutional. But The Festival failed to file a notice of cross-appeal asserting this claim. Under Idaho Appellate Rule 15(a),

[a]fter an appeal has been filed, a timely cross-appeal may be filed from any interlocutory or final judgment or order. If no affirmative relief is sought by way of reversal, vacation or modification of the judgment or order, an issue may be presented by the respondent as an additional issue on appeal under Rule 35(b)(4) without filing a cross-appeal.

I.A.R. 15(a).

The Festival raised this issue below, but it received no relief when the district court failed to address the issue. Since The Festival now seeks affirmative relief that it did not receive below, it had to file a notice of cross-appeal. "In Idaho, a timely notice of appeal or cross-appeal is a jurisdictional prerequisite to challenge a determination made by a lower court. Failure to timely file such a notice shall cause automatic dismissal of the issue on appeal." *Hamilton v. Alpha Servs., LLC*, 158 Idaho 683, 693, 351 P.3d 611, 621 (2015) (quoting *Miller v. Bd. of Trustees*, 132 Idaho 244, 248, 970 P.2d 512, 516 (1998)). The Festival did not file a timely notice of cross-appeal, but simply stated this claim as a new issue on appeal. Thus, we will not consider this issue.

**F. No party is entitled to attorney fees on appeal. The City is entitled to its costs.**

The Appellants request attorney fees under Idaho Code sections 18-3302(18), 12-117, 12-121, and Idaho Rule of Civil Procedure 54(c). The City requests an award of attorney fees under

Idaho Code section 12-117(1) and Idaho Appellate Rules 40 and 41. The Festival did not request fees or costs.

Although the City has prevailed on nearly all issues before us, the Appellants raised issues of first impression before this Court. "A party is [generally] not entitled to attorney's fees if the issue is one of first impression in Idaho." *Fuchs v. State, Dept. of Idaho State Police, Bureau of Alcohol Beverage Control*, 152 Idaho 626, 632, 272 P.3d 1257, 1263 (2012) (quoting *Lane Ranch P'ship v. City of Sun Valley*, 145 Idaho 87, 91, 175 P.3d 776, 780 (2007)); *but see Ada Cnty. v. Browning*, 168 Idaho 856, 862, 489 P.3d 443, 449 (2021) ("when a local government desires to bring an unsuccessful test case in the face of clearly established law" attorney fees can be awarded under Idaho Code section 12-117(1) even in cases of "first impression.").

We conclude that the Appellants' arguments on appeal had a reasonable legal and factual basis, and they articulated valid objections to the district court's judgment. Moreover, as we explained, the Appellants raise issues that present a matter of first impression for this Court. Thus, we decline to award attorney fees to the City under the high standard required by Idaho Code section 12-117.

The City is entitled to its costs on appeal. Although The Festival prevailed on the issues it joined with the City, it did not prevail on the issues it should have raised as a cross-appeal. Accordingly, we decline to award costs to The Festival. I.A.R. 40(a).

## V. CONCLUSION

The district court's decision granting summary judgment is affirmed. Costs are awarded to the City.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.